UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTYN STACK,<br>individually and on behalf of all others<br>similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>DEANGELO BROTHERS, LLC,<br><br>       Defendant. | Civ. A. No. 1:17-cv-11006-RWZ |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Justyn Stack ("Plaintiff" or "Stack") brings this action individually and on behalf of all other similarly situated persons against DeAngelo Brothers, LLC. ("Defendant" or "DB") upon information and belief, except as to his own actions, the investigation of his counsel, and facts that are a matter of public record, as follows:

## OVERVIEW

1. As is alleged more fully below, the Plaintiff claims that the Defendant has:1) violated and continues to violate M.G.L. c. 149, § 148 and M.G.L. c. 151, § 1A as a result of company-wide policy pursuant to which the Defendant fails to pay its employees who work or have worked out of the company's Taunton, Massachusetts location for compensable pre/post trip time worked and travel time; and 2) violated and continues to violate M.G.L. c. 149, 27F and M.G.L. c. 151, § 1A as a result of a company-wide policy pursuant to which the Defendant fails to pay employees the applicable prevailing wage rate for time spent hauling catch basin debris from state depots to landfills, and fails to use the applicable prevailing wage rate when calculating overtime compensation.

2. Plaintiff and the putative Class seek payment of all unpaid wages, unpaid overtime, statutorily mandated treble damages, attorneys' fees and costs, and all permissible legal interest.

3. In addition to the Plaintiff's class allegations, on an individual basis only, Plaintiff alleges that the Defendant terminated his employment in violation M.G.L. c. 149, § 148A.

4. On an individual basis, and as a result of Defendant's violation of M.G.L. c. 149, § 148A, Plaintiff seeks payment of all lost wages and benefits, statutorily mandated treble damages, attorneys' fees and costs, and all permissible legal interest.

## THE PLAINTIFF

5. Plaintiff Stack is a resident of Carver, Massachusetts and was employed by the Defendant out of Taunton, Massachusetts.

## THE DEFENDANT

6. Defendant DB is a foreign limited liability company. It conducts business out of Taunton, Massachusetts.

## CLASS PRE/POST-TRIP & TRAVEL TIME ALLEGATIONS

7. DB provides infrastructure maintenance services, including but not limited to catch basin cleaning, jet rodding, litter removal and vegetation spraying.

8. DB employed/employs individuals who worked/work out of the company's Taunton, Massachusetts location and performed/perform the services set forth in paragraph 7.

9. DB employees who worked/work out of the company's Taunton, Massachusetts location and performed/perform catch basin cleaning, jet rodding and litter removal services generally receive the applicable prevailing wage rate of pay for the hours of 7:00 a.m. to 3:30 p.m. each day.

10. In or about August 2014, DB hired Stack.

11. When hired, DB informed Stack that his "shop rate" for non-prevailing wage hours was $17.00/hr. Of the course of Stack's employment, his shop rate increased to $18.50/hr.

12. Upon information and belief, all DB field employees who worked/work out of the company's Taunton, Massachusetts location are compensated in a substantially similar manner; i.e. the applicable prevailing wage rate for prevailing wage work (not including work described in paragraphs 26-33), and a "shop rate" for all non-prevailing wage work.

13. As a DB employee, Stack performed catch basin cleaning services for the majority of his employment (including the transportation of catch basin debris from state depots to landfills), but occasionally performed jet rodding and litter removal services.

14. For at least three years preceding the filing the complaint in this matter, DB required each of its employees who worked of the company's Taunton, Massachusetts location, including Stack, to report each morning to its facility in Taunton, Massachusetts.

15. On average, DB employees who work of the company's Taunton, Massachusetts location and perform catch basin cleaning or jet rodding services arrive at DB's Taunton facility between 5:15-5:30 a.m. each morning.

16. On average, DB employees who work out of the company's Taunton, Massachusetts location and perform litter removal services arrive at DB's Taunton facility between 5:45-6:00 a.m. each morning.

17. When DB employees who work out of the company's Taunton, Massachusetts location, including Stack, arrive at DB's Taunton facility each morning, they are required by DB to perform a pre-trip vehicle inspection that includes going through a 39 point checklist that covers the general condition, engine

compartment, interior, exterior, operation, and spray/power wash systems of their work vehicle.

18. In addition to being required by DB to perform a daily pre-trip vehicle inspection, DB employees who work out of the company's Taunton, Massachusetts location routinely gather and load their vehicle with supplies/equipment that they need for the day, including but not limited to, engine oil, hydraulic oil, steel cables, anti-freeze, hydraulic fittings, and roadway signs, and bags.

19. DB employees who work out of the company's Taunton, Massachusetts location and perform litter removal for the day also routinely sharpen their litter pokers in the morning before they leave the Taunton facility.

20. After performing their pre-trip inspection and related tasks as outlined above, DB employees who work out of the company's Taunton, Massachusetts location, including Stack, would then leave DB's Taunton facility to arrive at the jobsite by 7:00 a.m.

21. DB employees who work out of the company's Taunton, Massachusetts location work out in the field until approximately 3:30 p.m. each day.

22. DB employees who work out of the company's Taunton, Massachusetts location are then required to return to DBs Taunton facility, perform a post-trip vehicle inspection, and turn in required paperwork before they commute home for the day.

23. As a result, DB employees who work out of the company's Taunton, Massachusetts location typically do not leave DB's Taunton facility until 4:30-5:00 p.m. each day.

24. Despite the fact that DB required/requires its employees who work out of the company's Taunton, Massachusetts location and perform catch basin cleaning, jet rodding and litter removal to: 1) report to its Taunton facility each morning; 2) perform tasks related to their employment while at the Taunton facility each morning; 3) travel to the jobsite; 4) travel back to DB's Taunton facility at the end

of each work day; and 5) perform tasks related to their employment while at the Taunton facility each afternoon/evening, DB did/does not pay its employees who work out of the company's Taunton, Massachustts location andperform catch basin cleaning, jet rodding or litter removal for any time worked prior to 7 a.m. or after 3:30 p.m.

25. In addition to failing to pay compensation to Stack and other employees who work out of the company's Taunton, Massachusetts location for pre/post trip time and travel time, DB failed to include this time to determine correct the overtime compensation owed.

### CLASS PREVAILING WAGE ALLEGATIONS

26. DB employees who perform catch basin cleaning in Massachusetts use either clam trucks or vactor (vac-haul) trucks to perform the cleaning.

27. When the DB employee's truck is filled with catch basin debris, the DB employee drives his truck to a state depot where he unloads the debris.

28. After the debris is unloaded, it will sit for a period of time at the state depot to dry out.

29. Once the debris is dried out, DB employees uses a three or four axle dump truck to transport the debris from the state depot to a landfill.

30. The task of transporting catch basin debris from state depots to landfills is prevailing wage work governed by M.G.L. c. 149, § 27F.

31. Because the task of transporting catch basin debris from state depots to landfills is prevailing wage work, DB employees who perform such work were/are entitled to be paid the prevailing wage rate that corresponds with the vehicle they use to perform such work; i.e. either the three or four axle truck rate.

32. Instead, DB pays itsemployees the "shop rate" for all time spent transporting catch basin debris from state depots to landfills.

33. DB also fails to use the applicable prevailing wage rate for such work when calculating overtime compensation owed to DB employees.

## INDIVIDUAL WRONGFUL TERMINATION ALLEGATIONS

34. In or about late summer/early Fall 2016, Stack worked on a DB job located in Rhode Island.

35. When Stack received his compensation for this job, he believed that his prevailing wage compensation was incorrect.

36. Stack first asked DB manager Paul Capachione ("Capachione") whether his compensation for the Rhode Island job was correct, to which Capachione responded that he would get back to him.

37. After not receiving a response from Capachione, Stack contacted DB's corporate office in Pennsylvania to inquire about his compensation on the Rhode Island job.

38. Capachione learned that Stack spoke with DB's corporate office, because sometime shortly thereafter, Capachione yelled at Stack for calling DB corporate to inquire about his pay.

39. In or about December 2016, as was routine, Stack was laid off for the winter season, with an expected return date in or about March 2017.

40. On or about February 14, 2017, Capachione contacted Stack and asked Stack to provide a photograph of himself for Capachione to send to DB corporate for the upcoming annual training.

41. Stack responded and informed Capachione that he was sick, but that he would send Capachione a picture of himself as soon as he was able.

42. Capachione did not respond so Stack assumed it was fine for him to send Capachione a picture as soon as he was able.

43. On or about February 27, 2017, Stack sent Capachione a photograph of himself as requested.

44. After receiving the photograph, Capachione called Stack and said that he wanted to meet with Stack.

45. On March 1, 2017, Stack went into DB's Taunton office to meet with Capachione.

46. When the two met, Capachione told Stack that he felt as though Stack resigned because Stack did not send in a picture on February 14, 2017.

47. Stack promptly responded and reminded Capachione that he had been sick, that he told Capachione he was going to send him a picture when he was feeling better, and that Capachione never informed him that this was unacceptable.

48. In response, Capachione stated that he "didn't know what to do with Stack" and that Stack "seemed unhappy."

49. Stack responded and stated that he felt Capachione and DB had not been paying him properly, to which Capachione responded by screaming at Stack, "maybe you shouldn't have called corporate you backstabber." Capachione then proceeded to call Stack a loser and fucking asshole, and further informed Stack that he had already submitted the termination paperwork and that Stack was no longer employed by DB.

## THE CLASS

50. M.G.L. c. 149, § 150, M.G.L. c. 151, § 1B and M.G.L. c. 149, § 27F authorize employees to bring claims on behalf of themselves and all others similarly situated. These statutes implicitly acknowledge that plaintiffs bringing claims on behalf of others similarly situated need not establish the requirements of Mass.R.Civ.P. 23; rather they only must establish that they are similarly situated to those whom they seek to bring claims on behalf of. See Kuehl v. D&R Paving, LLC, Middlesex Civ. Action No. 2009-0602. This issue notwithstanding, the Plaintiff asserts that his claims also meet the requirements of Mass.R.Civ.P. 23.

51. The "Class Members" are compromised of the following individuals: all individuals who worked for the Defendant out of the company's Taunton, Massachusetts location and performed catching basin cleaning (including the transportation of catch basin debris from state depots to landfills), jet rodding or litter removal services within the three years preceding the filing of this complaint.

52. The Class Members are similarly situated to the Plaintiff and to each other, because they all were all subject to the Defendant's unlawful practice as described above.

53. On information and belief, there are 25 plus Class Members affected by the Defendant's conduct as described herein.

54. There are questions of law and fact common to the Plaintiff and Class Members that predominate over any questions affecting only individual members, including:

    a. Whether the Defendant failed to pay the Plaintiff and Class Members for time worked prior to 7:00 a.m. and after 3:30 p.m.

    b. Whether the Defendant failed to pay the applicable prevailing wage rate to the Plaintiff and Class Members for time spent transporting catch basin debris from state depots to landfills.

    c. Whether the Defendant failed to pay all overtime compensation owed to the Plaintiff and Class Members as a result of the Defendant's failure to pay for time worked prior to 7:00 a.m. and after 3:30 p.m., and as a result of the Defendant's failure to compensation for time spent transporting catch basin debris from state depots to landfills at the applicable prevailing wage rate.

55. The Plaintiff's claims are typical of the claims of the Class Members. The Plaintiff and all Class Members were subjected to and harmed by the Defendant's conduct described above in the same manner.

56. The Plaintiff will fairly and adequately protect the interests of the Class and has retained an attorney experienced in class action wage and employment litigation.
57. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members.
58. A class action is therefore superior to other available methods for the fair and efficient adjudication of this controversy.
59. Plaintiff does not anticipate any difficulty in the management of this litigation.

### COUNT 1
### Violation of M.G.L. c. 149, § 148 (CLASS CLAIM)

60. Plaintiff re-alleges and incorporates by reference ¶¶ 1- 59 above as if fully set forth herein.
61. By its conduct as set forth herein, the Defendant has violated M.G.L. c. 149, § 148.
62. The Defendant is liable for the full amount of the Plaintiff's and Class Members' unpaid wages, plus treble damages, interest and reasonable attorney's fees and expenses.

### COUNT 2
### Violation of M.G.L. c. 151, § 1A (CLASS CLAIM)

63. Plaintiff re-alleges and incorporates by reference ¶¶ 1- 62 above as if fully set forth herein.
64. By its conduct as set forth herein, the Defendant has violated M.G.L. c. 151, § 1A.
65. The Defendant is liable for the full amount of the Plaintiff's and Class Members' unpaid wages, plus treble damages, interest and reasonable attorney's fees and expenses.

### COUNT 3
### Violation of M.G.L. c. 149, § 27F (CLASS CLAIM)

66. Plaintiff re-alleges and incorporates by reference ¶¶ 1- 65 above as if fully set forth herein.
67. By its conduct as set forth herein, the Defendant has violated M.G.L. c. 149, § 27F.
68. The Defendant is liable for the full amount of the Plaintiff's and Class Members' unpaid wages, plus treble damages, interest and reasonable attorney's fees and expenses.

### COUNT 4
### Violation of M.G.L. c. 149, § 148A (INDIVIDUAL CLAIM)

69. Plaintiff re-alleges and incorporates by reference ¶¶ 1- 68 above as if fully set forth herein.
70. By its conduct as set forth herein, the Defendant has violated M.G.L. c. 149, § 148A.
71. The Defendant is liable for the full amount of the Plaintiff's lost wages and benefits, plus treble damages, interest and reasonable attorney's fees and expenses.

**WHEREFORE**, the Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against the Defendant as follows:

A. A judgment and order certifying this case as a class action and appointing the Plaintiff and his counsel to represent the Class Members;
B. A judgment and order requiring a certified, independent accounting at Defendant's expense of all payroll and financial records in the possession of the Defendant, and/or the appointment of a Master or Receiver to determine the correct compensation owed to the Plaintiff and Class Members;
C. A judgment and order awarding Plaintiff and Class Members their unpaid wages;

D.  A judgment and order awarding Plaintiff lost wages and benefits as a result of his wrongful termination;

E.  A judgment and order requiring the Defendant to pay the Plaintiff and Class Members all statutorily mandated treble damages for the class claims and individual claims;

F.  A judgment and order requiring Defendant to pay the Plaintiff's and Class Members' reasonable attorneys' fees and the costs of this action;

G.  A judgment and order requiring the Defendant to pay all legal interest permissible; and

H.  Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

By his attorney,

/s/ Adam J. Shafran
Adam J. Shafran, BBO#670460
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)

CERTIFICATE OF SERVICE

I, Adam J. Shafran, do hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 18, 2017

/s/ Adam J. Shafran
Adam J. Shafran

11