UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JUSTYN STACK,
individually and on behalf of all others
similarly situated,

       Plaintiff,

v.

DEANGELO BROTHERS, LLC,

       Defendant.

Civ. A. No. 1:17-cv-11006-RWZ

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Justyn Stack ("Plaintiff") with consent of Defendant DeAngelo Brothers, LLC

("Defendant") (Plaintiff and Defendant, together the "Parties")[1], respectfully submits this

Motion for Preliminary Approval of Proposed Class Action Settlement. For settlement purposes

only, the Parties hereby move the Court for preliminary approval of the proposed class action

settlement (the "Settlement") as set forth in the Settlement Agreement ("Settlement

Agreement") attached hereto as Exhibit A.

Specifically, and for settlement purposes only, the Parties respectfully request that the

Court enter a Preliminary Approval Order (the "Preliminary Approval Order") in the form

attached hereto as Exhibit B. The Preliminary Approval Order would:

1) Grant class certification of this action pursuant to Fed. R. Civ. P. 23 for settlement
purposes and certify the class as set forth herein;

---

[1] Defendant consents to this motion for purposes of settlement only. Defendant reserves the right to assert all of its defenses to all of the claims asserted and to certification of a class should final approval of the settlement not occur.

2)  Appoint plaintiff Justyn Stack as class representative for purposes of settlement;

3)  Appoint Adam J. Shafran and Jonathon D. Friedmann of Rudolph Friedmann LLP as class counsel;

4)  Grant preliminary approval of the Settlement Agreement;

5)  Approve the form and content of, and direct the distribution of, the proposed Notice of Proposed Class Action Settlement ("Class Notice") which is attached hereto as Exhibit C; and

6)  Set the final approval hearing for a date at least one hundred (100) days from the date of this Motion.[2]

## I.    The Proceedings to Date.

On March 30, 2017, the Plaintiff filed this class action suit in Massachusetts state court alleging that his former employer, Defendant DeAngelo Brothers: 1) failed to pay its Massachusetts-based employees working on "prevailing wage jobs" for alleged compensable pre/post trip time worked and travel time as required by M.G.L. c. 149, § 148 (the Massachusetts Wage Act) and M.G.L. c. 151, § 1A (the Massachusetts Overtime Act); and 2) failed to pay its Massachusetts-based employees a prevailing wage rate of pay for all time spent hauling catch basin debris from state depots to landfills as required by M.G.L. c. 149, § 27F (the Massachusetts Prevailing Wage Act).

In addition to his class claims, the Plaintiff also alleged that his employment was unlawfully terminated in violation of M.G.L. c. 149, § 148A, in retaliation for concerns he raised to his former manager regarding whether he was being properly compensated for work unrelated to the class claims.

---

[2] Final approval of the Settlement may not be granted less than 90 days after notices to state agencies are provided pursuant to 28 U.S.C. § 1715. The Defendant will send the required notices within ten (10) days after the filing of this Motion, and so a final approval hearing date 100 days from the filing of this motion satisfies the notice timing requirements of 28 U.S.C. § 1715.

FPDOCS 33886264.1

On May 31, 2017, the Defendant removed the case to this Court based on diversity jurisdiction, and on June 14, 2017, the Defendant filed its Answer denying the Plaintiff's allegations in full.[3] Thereafter, the Parties completed a substantial portion of discovery, which included the exchange of written discovery, the production of approximately 4,000 documents, and depositions of the two most important witnesses in the case; the Plaintiff, and the Defendant's Taunton branch manager, Paul Capachione ("Capachione"). Following the completion of Capachione's deposition, the Parties agreed to attend mediation, and on January 5, 2018, the Parties filed a joint motion to stay case for 90 days pending mediation. On January 8, 2018, this Court allowed the Parties' joint motion, and ordered the Parties to report the status of the case upon the conclusion of the mediation.

## II.      Mediation and Class Damage Calculations.

After the Court allowed the Parties' joint motion to stay the case, the Parties retained a mediator with substantial experience mediating wage and hour class actions. See bio of Mark Irvings attached hereto as Exhibit D. In advance of the mediation, the Plaintiff submitted to the Defendant a detailed request for information that the Plaintiff required in order to perform the relevant class damage calculations and prepare a corresponding class settlement proposal. The Defendant responded and provided all of the requested information, including: 1) a complete list of all putative class members; 2) a detailed chart showing exact number of days within the class period that each class member traveled to each job location; 3) a chart listing the number of days that each class member performed catch basin debris hauling with the class period; 4) each class

---

[3] On July 18, 2017, the Plaintiff filed a First Amended Complaint to correctly name the Defendant and more specifically define the proposed class. The substantive allegations remained the same. On July 31, 2017, the Defendant filed its Answer to the Plaintiff's First Amended Complaint. Defendant's Answer to the First Amended Complaint is substantively the same as its original Answer.

member's shop rate[4] for each year within the class period; and 5) the number of weeks within the class period that each class member worked overtime hours.

Following the Defendant's production, and in advance of the mediation, the Plaintiff prepared a detailed class settlement proposal based on individual damage calculations for each putative class member. Plaintiff's settlement proposal also contained a separate settlement proposal for Plaintiff's wrongful termination claim. The parties then attended a full-day mediation session on March 1, 2017, at which the Parties reached an agreement to settle both the class and individual claims.

### III.    The Proposed Settlement.

The primary terms of the proposed Settlement Agreement are as follows:

- The class claims are resolved in the amount of $133,000, inclusive of all unpaid wages, overtime, liquidated/treble damages, interest, and an incentive award for the Plaintiff in the amount of $8,000.[5]

- The Plaintiff's individual wrongful termination claim is resolved in the amount of $32,000, inclusive of all attorneys' fees, damages and interest.

- The Defendant will not contest Plaintiff's counsel's petition for approval of $70,000 in attorneys' fees and costs to be paid by Defendant in addition to the $133,000 and $32,000 amounts set forth above.

- The settlement includes a classwide release and waiver of all Massachusetts state law wage and hour claims arising out of or relating to facts asserted in the Litigation for period of March 30, 2014 though the preliminary approval of the settlement, as well as all FLSA claims for those Class Members who sign or negotiate the settlement checks.

- The Plaintiff will be required to execute a supplemental settlement agreement which will include a general release, confidentiality and non-disparagement provisions (and liquidated damages for breach in the amount of $6,000).

The Parties propose that, along with granting preliminary approval of the Settlement, the

---

[4] The shop rate is each class member's hourly wage rate that the Plaintiff alleges each class member should have been paid for all pre/post trip time worked and travel time.

[5] The Defendant is responsible for paying the employer side payroll taxes in addition to the $133,000 amount.

4

Court adopt the schedule set forth below, to allow the Parties to effectuate the various steps in

the settlement approval process under the Settlement Agreement and also to comply with

provisions requiring notices to State Attorneys General as mandated by 28 U.S.C. § 1715.

| Event | Timing |
|---|---|
| Defendant sends notice to Government Agencies pursuant to Class Action Fairness Act. | Within ten (10) days after the filing of the Parties' Joint Motion for Preliminary Approval. |
| Plaintiff's counsel mails the Class Notice | Within seven (7) days after the Court enters the Preliminary Approval Order. |
| Postmark deadline for submitting Objections and/or Requests for Exclusion. | Within thirty (30) days after the date that the Class Notice and Claim Form is mailed. |
| Plaintiff's counsel provides Defendant's counsel any Objections and/or Requests for Exclusions received. | Within seven (7) days after the postmark deadline. |
| Deadline for Parties to submit a Joint Motion for Final Approval | Within thirty (30) days after Plaintiff's counsel provides Defendant's counsel any Objections and/or Requests for Exclusions received. |
| Final Approval Hearing | One hundred (100) days from the filing of the Parties' Joint Motion for Preliminary Approval. |
| Effective Date. | The later of (i) 31 days after the Final Approval Order is entered if no appeal is filed, or (ii) upon the final disposition of any and all appeals that have the effect of confirming the Final Approval Order in its entirety. |
| Plaintiff's counsel provides spreadsheet containing the settlement distribution | Within ten (10) days of the Effective Date. |
| Defendant mails/distributes all settlement payments and attorneys' fees/costs to Plaintiff's counsel. | Within twenty (20) days of the Effective Date. |
| Expiration of uncashed settlement checks. | Ninety (90) days after issuance. |
| Reverter funds paid to Cy-Pres. | Within forty-five (45) days after the expiration date of uncashed checks. |

5

Both Plaintiff and Defendant believe that the Settlement is fair, adequate, and reasonable and, only for purposes of settlement, submit that the proposed Preliminary Approval Order preliminarily approving the Settlement and certifying the Settlement Class be entered.

## III.    Legal Argument

### A.    The Court Should Certify The Proposed Class.

The parties propose that the Court certify the following Class for settlement purposes:

> All current and former employees of Defendant who worked out of the Defendant's Taunton, Massachusetts location and performed catching basin cleaning (including the transportation of catch basin debris from state depots to landfills), jet rodding or litter removal services during the Class Period.
>
> Pursuant to the Settlement Agreement, the term "Class Period" means the period from March 30, 2014 through the date on which the Court enters Preliminary Approval of the settlement.

### B.    Class Certification Is Appropriate.

Fed. R. Civ. P 23(a) provides four prerequisites to class certification:

> (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Here the total number of class members is 25, which, particularly in light of the recognized purposes of the Massachusetts Wage Act, is sufficiently numerous for settlement purposes. See Torrezani v. VIP Auto Detailing, Inc., 318 F.R.D. 548, 554 (D. Mass. 2017) (certifying class of 30 individuals in the interest of judicial economy and because the Massachusetts Wage Act should be utilized to vindicate potential class members with "limited financial resources [who] . . . would find it difficult to pursue the claims themselves"). See also Machado v. System4 LLC, 465 Mass. 508, 515 n. 12 (2013) (The "policy rationales [of the Wage Act] include the deterrent effect of class action lawsuits and, unique to the employment context, the desire to allow one or more

FPDOCS 33886264.1

courageous employees the ability to bring claims on behalf of other employees who are too intimidated by the threat of retaliation and termination to exercise their rights under the Wage Act").

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class; it does not require that class members' claims be identical. "In assessing commonality, the court should inquire into 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" In re Celexa and Lexapro Marketing and Sales Practice Litigation, 2017 WL 3495694, *3 (D. Mass. 2017) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Rule 23(a)(3) requires that the claims and defenses of the representatives be typical of the claims and defenses of the class.

> The logical import of this language is that a representative plaintiff's claims are typical of those of the class as a whole if defendants engaged in the same course of allegedly wrongful conduct with respect to the representative class members as to other class members... Seen in this light, the burden on plaintiffs in proving typicality is not "very substantial."

Abelson v. Strong, 1987 WL 15872, *2 (D. Mass 1987).

Here, the Plaintiff and Class Members allege that they were all subject to the same pre/post trip time, travel time and debris hauling policies. Plaintiff contends that whether an employee traveled to a different location/jobsite only implicates the amount of damages the individual would receive, and individual damages issues are not a bar to certification. See Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003); quoting Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages [sought by the Plaintiffs and Class Members] is invariably an individual question and does not defeat class action treatment"); Noble v. 93 University Place Corp., 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (holding that the determination of how many hours an employee worked goes to damages and is insufficient to

defeat class certification). Accordingly, Plaintiff maintains that there are questions common to the class and the Plaintiff's claims are typical of those of the class.

Finally, Fed. R. Civ.P. 23(a)(4) requires the representative parties to fairly and adequately protect the interests of the class. Adequacy of representation depends on two factors: (1) the Plaintiff's attorneys must be qualified, experienced and generally able to conduct the litigation, and (2) the Plaintiff must not have interests antagonistic to that of the class. Both of these elements are satisfied. Plaintiff's counsel has litigated and been appointed as class counsel in several significant wage and hour class action lawsuits in both state and federal court, and have ample employment litigation experience. See Affidavit of Adam J. Shafran attached hereto as Exhibit E, and Affidavit of Jonathon D. Friedmann attached hereto as Exhibit F.

The Plaintiff does not have any interests that are antagonistic to that of the class. The Plaintiff and the class were subject to the same pre/post trip time, travel time and debris hauling policies, and the Plaintiff's share of the class settlement was proportionally determined in the same manner as all class members. Accordingly, the Plaintiff qualifies as an adequate class representative under Rule 23(a)(4).

In addition to the Fed.R. Civ. P. 23(a) factors, "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and . . . a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). For settlement purposes. Plaintiff's claims satisfy Rule 23(b). Plaintiff maintains that there are no questions of law or fact related to the class claims that affect only individual members; to require individual actions by each class member would be inefficient, contrary to the purposes of the Wage Act, and would not obtain any greater relief than a class action could obtain on their behalf; and the only individual

FPDOCS 33886264.1

issues related to the class claims in this matter go to damages which, as explained above, are not a bar to class certification. Finally, and as explained in greater detail below, the settlement of Plaintiff's individual wrongful termination claim is fair and reasonable.

## C. The Settlement Agreement Should Be Preliminarily Approved by the Court.

"While settlement and compromise are favored by the law, the court has a fiduciary duty to absent members of the class in light of the potential for conflicts of interest among class representatives and class counsel and the absent members." In re Lupron Marketing and Sales Practice Litigation, 228 F.R.D. 75, 93 (D. Mass. 2005). "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and reasonable." Id. "'When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.'" Id. (quoting City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)).

### 1. The Standards and Procedures for Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, via settlement:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> >
> > (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> >
> > (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new

FPDOCS 33886264.1

opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997); In re Relafen Antitrust Litigation, 360 F.Supp.2d 166, 192 (D. Mass. 2005).

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. In re Relafen, 360 F. Supp.2d at 194.  Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. Id.

2.  **There is a Strong Basis to Believe that the Proposed Settlement is Fair, Reasonable and Adequate.**

Courts in the First Circuit evaluate the following factors when determining the fairness of a settlement:

> (1) [the] risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and

FPDOCS 33886264.1

(5) quality of counsel and conduct during litigation and settlement negotiations.

In re Celexa and Lexapro Marketing and Sales Practices Litigation, 2014 WL 4446464, *5 (D.Mass. 2014) (citing In re Tyco Int'l Ltd. Multidistrict Litig, 535 F.Supp.2d 259, 259-260 (D.N.H. 2007)).

The Settlement meets all of these tests. This Action has been litigated for one year, has been thoroughly investigated as a result of the Parties completing the majority of all necessary discovery, and has been thoroughly vetted at mediation by a skilled and experienced mediator. Each class member will receive approximately 100% of their single damages based on individualized calculations that take into account the exact number of days that each class member traveled to various job sites and performed debris hauling during the Class Period, the locations where each class member traveled during the Class Period, and each Class Member's specific shop rate during the Class Period.[6] Settlement of class claims for approximately 100% of the single damage amount is fair and reasonable when taking into account the substantive defenses that Defendant intends to raise if the matter continues to be litigated. These defenses include, but are not limited to, arguments to the effect that the company had no requirement that its employees report to the company office in Taunton at the beginning and end of each day, that many employees did in fact report directly from their homes to job sites and not to the company office on many days during the Class Period, and that any class member travel time was performed before or "after the completion of the . . . employees' principal activity" rendering

---

[6] The 100% of single damages that each class member will be receive will only be slightly reduced by the $8,000 incentive award that the Plaintiff will ask the Court to award him for his diligent service to the class that will apportioned across all class members. On average, this will only reduce each class member's share of the class settlement by $320.

11

such time non-compensable. See Local 589, Amalgamated Transit Union v. MBTA, 94 F. Supp. 3d 47, 54 (D. Mass 2015).

Further, Plaintiff's counsel will request that the Court award them attorneys' fees and costs in the amount of $70,000, which will be paid by the Defendant in addition to the class settlement amount, and so Plaintiff's counsel will not seek any fee out of the funds to be paid to the class members.[7] Finally, the settlement of Plaintiff's individual wrongful termination claim in the amount of $32,000 is fair and reasonable.[8]

Each component described above was the result of arm's-length negotiations, conducted by experienced counsel for the Parties, after relevant calculations were performed for every class member and the class as a whole. Plaintiffs are represented by counsel who has significant experience (and success) in prosecuting (and settling) wage and hour claims. Defendant, similarly, is represented by counsel with considerable experience (and success) in defending (and settling) class wage and hour litigation. The amount to be distributed to each class member is based on individualized damage calculations performed by the Parties. This amount is a reasonable and fair settlement relative to the claims asserted, and is particularly fair and reasonable given the inherent risks of continued litigation. Any class member who believes that

---

[7] Although a portion of Plaintiff's counsel's fees and costs are attributable to Plaintiff's individual wrongful termination claim and would not require court approval, in the interest of full transparency, Plaintiff's counsel intends to file a fee application seeking approval of the full $70,000 amount.

[8] Not including any lost overtime compensation, Plaintiff alleged that as a result of his termination he suffered lost wages and benefits of approximately $21,500 per year, and that this yearly amount would accrue for years, if not until his retirement because he earns significant less in the employment he obtained following his termination than what he earned while employed by the Defendant. Defendant vehemently denied and continues to deny that Plaintiff was retaliated against and/or wrongfully terminated. Accordingly, the $32,000 settlement of Plaintiff's wrongful termination claim is fair and reasonable, particularly when considering that if he prevailed on his claim, it would be subject to trebling. See M.G.L. c. 149, § 150 (trebling wrongful termination damages for claims under M.G.L. c. 149, § 148A).

FPDOCS 33886264.1

the settlement is insufficient can, of course, pursue an independent remedy if he or she submits a valid and timely request for exclusion.

This Settlement Agreement provides for claims administration procedures designed to assure all Settlement Class Members' equal and sufficient due process rights. Continued litigation would be long, complex and expensive as all dispositive motion practice has yet to occur, and would present risks to both sides of a less favorable outcome. See Lake v. First National Bank, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement).

The proposed Settlement Agreement does not unduly grant preferential treatment to the named Plaintiff (although he is proposed to obtain an incentive award well within the parameters accepted in this Court and in consideration for the work he performed over the last year that this action was litigated), and it does not provide excessive compensation to counsel.

**D. The Class Notice Provides Adequate Notice to The Settlement Class Members.**

**1. The Notice Satisfies Due Process.**

Following entry of a preliminary approval order, Defendant's counsel will provide to Plaintiff's counsel the most recent address of each class member. Plaintiff's counsel will then send, by U.S. First Class Mail, one copy of each of the Class Notice to each Settlement class member. Plaintiff's counsel will endeavor to ensure that all Settlement class members receive notice by taking all reasonable steps to trace the addresses of any Settlement class member for whom a Class Notice is returned by the post office as undeliverable, including performing an additional address search. Plaintiff's counsel will then promptly re-mail the Class Notice and to each Settlement class member for whom a new address is found.

**2. The Proposed Class Notices Are Accurate, Informative And Easy to Understand.**

13

FPDOCS 33886264.1

Under Fed. R. Civ. P. 23(e), Settlement class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent and potential class members to enable them to make an intelligent choice as to whether to participate in the Settlement or to exclude themselves from the Settlement.

Here, the proposed Class Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including: the class settlement amount; class counsel's fees and incentive awards to the named Plaintiff; the various courses of action available to each Settlement class member; the deadlines for taking each course of action; and the consequences of taking or foregoing the various options available to Settlement class members. See *Manual for Complex Litigation (Fourth)* § 21.312; Fed. R. Civ. P. 23(h).

Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement Class Notice disseminated under authority of the Court. See, e.g., 4 *Newberg on Class Actions (Fourth)* §§ 8.21, 8.39; *Manual for Complex Litigation (Fourth)* §§ 21.311-21.312.

**E.   A Final Approval Hearing Should Be Scheduled.**

The Court should schedule a Final Approval Hearing to determine that final approval of the Settlement is fair and proper. The hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement. At that time, moreover, Class Counsel will present their application for fees and expenses pursuant to Rule 23(h) as well as for the service award to the named Plaintiff. Accordingly, the Parties request that the Court schedule the Final Approval Hearing for no earlier than one hundred and fifty (150) days from the date of this motion, consistent with 28 U.S.C. § 1715(d).

## IV.    Conclusion

For the foregoing reasons, and for settlement purposes only, the Parties respectfully

request that this Court enter the Preliminary Approval Order attached hereto as Exhibit B.

Respectfully submitted,

JUSTYN STACK, individually and on
behalf of all others similarly situated

By his Attorney

/s/ Adam J. Shafran
Adam J. Shafran (BBO#670460)
Jonathon D. Friedmann (BBO#180130)
Rudolph Friedmann LLP
92 State Street
Boston, MA  02109
Tel: (617)-723-7700
Fax: (617)-227-0313
ashafran@rflawyers.com
jfriedmann@rflawyers.com

### CERTIFICATE OF SERVICE

I, Adam J. Shafran, do hereby certify that this document filed through the ECF system
shall be sent electronically to the registered participants as identified on the Notice of Electronic
Filing on March 26, 2018

/s/ Adam J. Shafran
Adam J. Shafran

FPDOCS 33886264.1